**Nos. 22-15513 & 22-16348**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BATTLE BORN INVESTMENTS COMPANY, LLC; ET AL.,

*Claimants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:20-cv-07811-RS, Hon. Richard Seeborg

_____

**CLAIMANTS-APPELLANTS' REPLY BRIEF**

_____

Rees F. Morgan
Stan Roman
Sarah E. Peterson
Bina G. Patel
Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Tel: 415.391.4800

*Attorneys for Claimants-Appellants*
Battle Born Investments Company, LLC; First 100, LLC; 1st One Hundred Holdings, LLC

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

ARGUMENT .......................................................................................... 3

I. Claimants' claims were erroneously stricken on a Rule 12(c) pleading motion. ...................................................................... 3

    A. The Government concedes that it submitted a pleading motion and that Claimants only had to plead an unequivocal ownership interest in the Bitcoin. ............. 3

    B. The Government ignores Claimants' unequivocal allegations that they own the Bitcoin. ........................... 4

    C. The Government's other arguments that the claims were properly stricken under Rule 12(c) are meritless. 6

II. The order striking Claimants' claims was erroneous even if this Court *sua sponte* construes the motion to strike as a motion for summary judgment. ............................................... 8

    A. Contrary to the Government's mistaken belief, Claimants did not have to "prove" they own the Bitcoin. ...................................................................... 9

    B. The Government's misunderstanding of the summary-judgment standard infects its analysis. ....................... 10

    C. The Government's other points fail to undermine Claimants' evidence that Ngan owned—and now Claimants own—the Bitcoin in 1HQ3. ........................ 14

    D. The Government makes no effort to show that the evidence it offered in support of its forfeiture theory was admissible. ........................................................... 17

i

E.    The Government concedes that the lawfulness of Claimants' ownership is not relevant to standing. ..... 20

F.    The Government cannot justify the district court's denial of Claimants' request to take discovery ........... 21

III.    The Government provides no legitimate alternative ground for affirmance. ....................................................... 23

A.    This Court cannot and should not affirm on untimeliness. ................................................... 23

1.    The district court neither analyzed the relevant factors nor exercised its discretion to strike Claimants' claims as untimely. .......................... 24

2.    Claimants would be excused under the 12-factor test. ....................................................... 26

B.    This Court cannot adjudicate the merits to resolve this appeal. ........................................................ 32

IV.    The parties agree that the jurisdictional issue is moot, and this appeal may proceed. ...................................... 36

CONCLUSION ........................................................ 36

CERTIFICATE OF COMPLIANCE ...................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Yellen,*
34 F.4th 841 (9th Cir. 2022) ........................................................ 31, 32

*Ashby v. McKenna,*
331 F.3d 1148 (10th Cir. 2003) .................................................... 24, 25

*Austad v. United States,*
386 F.2d 147 (9th Cir. 1967) ............................................................ 7, 9

*Employers Teamsters Local Nos. 175 and 505 Pension Trust
Fund v. Clorox Co.,*
353 F.3d 1125 (9th Cir. 2004) ...................................................... 20, 21

*Gilibeau v. City of Richmond,*
417 F.2d 426 (9th Cir. 1969) ............................................................... 24

*Landwehr v. DuPree,*
72 F.3d 726 (9th Cir. 1995) ................................................................ 35

*Manion v. American Airlines, Inc.,*
395 F.3d 428 (D.C. Cir. 2004) ............................................................ 24

*In re Ngan,*
Case No. 17-14166-BTB, Dkt. Nos. 558, 566 (U.S. Bankr.
Ct. D. Nev.) ......................................................................................... 12

*Opara v. Yellen,*
57 F.4th 709 (9th Cir. 2023) ............................................................... 25

*U.S. v. U.S. Currency, in the Amount of $103,387.27,*
863 F.2d 555 (7th Cir.1988) ............................................................... 31

*United States v. $100,348.00 in U.S. Currency,*
354 F.3d 1110 (9th Cir. 2004) ................................................ 23, 26, 27

*United States v. $11,500.00 in U.S. Currency,*
710 F.3d 1006 (9th Cir. 2013)............................................................. 28

*United States v. $125,938.62,*
370 F.3d 1325 (11th Cir. 2004)............................................... 26, 29, 31

*United States v. $133,420.00 in U.S. Currency,*
672 F.3d 629 (9th Cir. 2012)............................................................ 6, 9

*United States v. $284,950.00 in US Currency,*
933 F.3d 971 (8th Cir. 2019) .............................................................. 10

*United States v. All Funds on Deposit with R.J. O'Brien &*
*Assocs.,*
783 F.3d 607 (7th Cir. 2015)............................................................ 9, 32

*United States v. JP Morgan Chase Bank Acct. No. Ending*
*8215,*
835 F.3d 1159 (9th Cir. 2016)............................................................... 9

*United States v. One 1990 Beechcraft, 1900 C Twin Engine*
*Turbo-Prop Aircraft, Venezuelan Registration No.*
*YV219T, Serial UC118,*
619 F.3d 1275 (11th Cir. 2010)............................................................ 34

*United States v. Real Prop. Located at 17 Coon Creek Rd.,*
*Hawkins Bar Cal., Trinity Cnty.,*
787 F.3d 968 (9th Cir. 2015).............................................................. 27

*United States v. Seventeen Thousand Nine Hundred Dollars*
*($17,900.00) in United States Currency,*
859 F.3d 1085 (D.C. Cir. 2017)...................................................... 13, 14

*United States v. Thompson-Riviere,*
561 F.3d 345 (4th Cir. 2009)............................................................. 25

*Zetwick v. County of Yolo,*
850 F.3d 436 (9th Cir. 2017)......................................................... 11, 13

iv

**Statutes**

18 U.S.C. § 983(d)(3)(A)................................................................33

18 U.S.C. § 983(d)(3)(A)(ii) .........................................................35

18 U.S.C. § 983(d)(6)(B)(iii) ........................................................33

**Other Authorities**

Fed. R. Civ. P. 56(c)(1)(A) ...........................................................16

Fed. R. Civ. P. 56(c)(4) ................................................................16

Fed. R. Civ. P. 12(c) ............................................................3, 6, 7

Fed. R. Civ. P. 56(d)..........................................................20, 21, 22

Fed. R. Civ. P. Supp. R. G(5) ......................................................10

Fed. R. Civ. P. Supp. R. G(8)(c) ..................................................10

## **INTRODUCTION**

The Government concedes that its motion to strike was a motion for judgment on the pleadings, and concedes that to survive such a motion Claimants only needed to plead an "unequivocal assertion of . . . ownership" of the Bitcoin in 1HQ3. The district court correctly found that Claimants' verified claims satisfied this minimal requirement: its order stated that Claimants "filed a verified claim asserting ownership of the entire 1HQ3 wallet." The district court nevertheless granted the motion to strike. This was error and warrants reversal.

Given the Government's concessions, this Court need not consider whether Claimants' claims should have been stricken under a summary-judgment standard. If this Court decides to address that issue, however, Claimants exceeded the "low" bar of presenting "some evidence" that they have a "colorable interest" in the Bitcoin in 1HQ3. The Government's arguments to the contrary convey a fundamental misunderstanding of summary-judgment procedures. First, the Government applies the wrong summary-judgment standard, arguing that Claimants were required to "prove by a preponderance of the evidence" that they have an ownership interest in the Bitcoin in 1HQ3.

1

A party opposing summary judgment need not "prove" anything. Second, the Government asks this Court to weigh Claimants' evidence against conflicting evidence and make credibility determinations, neither of which is appropriate at summary judgment. Moreover, the Government makes no effort to establish that the declaration of IRS agent Jeremiah Haynie—the sole evidence that the Government submitted in support of its motion—was admissible. The district court erred to the extent it relied upon Haynie's hearsay declaration to strike Claimants' claims.

This Court cannot affirm the district court's order on any alternative ground. The district court did not address the timeliness issue. It made no findings and performed no analysis; there is no exercise of discretion for this Court to review. Nor can this Court resolve this appeal by ruling for the Government on the merits of its forfeiture theory.

This Court should reverse.

## ARGUMENT

### I. Claimants' claims were erroneously stricken on a Rule 12(c) pleading motion.

#### A. The Government concedes that it submitted a pleading motion and that Claimants only had to plead an unequivocal ownership interest in the Bitcoin.

The Government does not dispute that its motion to strike was a motion for judgment on the pleadings under Rule 12(c), and that the district court granted its motion on this basis. *See* AB at 32 ("[T]he district court's order granted the government's motion to strike on the basis that Battle Born failed to properly plead standing.").[1] Indeed, the Government urges this Court not to conclude that the district court converted the Government's motion into one for summary judgment. *Id.* at 36–37 ("[T]hat the district court may have acknowledged some of the evidence submitted in the litigation of the government's motion to strike did not mean that consideration of this evidence was necessary to its decision, converting the court's analysis to one of summary judgment."). Claimants agree with the Government that this Court should review the motion and ruling under Rule 12(c).

---

[1] "OB" refers to Claimants' Opening Brief and "AB" refers to the Government's Answering Brief.

The Government further concedes that "[a]t the motion to dismiss stage," "a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing." *Id*. at 33. And the Government admits that "the threshold for pleading [Article III] standing is low." *Id.* at 32.

B. **The Government ignores Claimants' unequivocal allegations that they own the Bitcoin.**

Notwithstanding these concessions, the Government argues that Claimants did not plead standing because, according to the Government, Claimants "only speculated that perhaps Ngan had owned the Defendant Property" and had not asserted that Claimants "actually owned" it. AB at 25; *see id.* at 33 (arguing that Claimants "stopped short of stating that they actually owned the Defendant Property"). Not so. Claimants alleged actual ownership several times. For example, Claimant Battle Born Investments Company, LLC ("Battle Born") alleged: "The Defendant Property has been since May 14, 2018 and is still currently owned by Claimant Battle Born." ER-165. Claimants First 100, LLC ("First 100") and 1st One Hundred Holdings, LLC ("1st One Hundred Holdings") alleged "an interest in the Defendant Property as innocent 'owners'" and alleged that they are "the rightful owners of

4

[the Defendant] Property." ER-160. The district court accordingly found that Claimants' "verified claim assert[s] ownership of the entire 1HQ3 wallet that was seized." ER-013. The Government simply ignores these allegations and the district court's finding in its Answering Brief.

Instead of addressing Claimants' unequivocal assertions of ownership, the Government argues that Claimants equivocated on other topics. First, the Government points to an allegation in one of Claimants' two verified claims that noted that Claimants need more information to determine how Ngan is associated with Individual X. AB at 34. But that statement merely expresses uncertainty as to how Ngan and Individual X are connected, if at all, and Individual X is only relevant to the Government's theory of forfeiture (as the person the Government claims stole the Bitcoin), not to Claimants' theory of ownership. The allegation does not render equivocal Claimants' assertions that they own the Bitcoin. Second, the Government criticizes Claimants for using the phrase "insofar as" in connection with Claimants' description of how they became innocent owners of the Bitcoin. *Id.* at 33 (emphasis omitted). That statement concerns

whether Claimants' ownership is lawful, not whether Claimants own the Bitcoin.

Claimants were not required to plead anything other than an "unequivocal assertion of an ownership interest." *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012). The statements the Government describes as equivocal relate to *how* Ngan obtained the Bitcoin in 1HQ3, not to whether he obtained it or whether Claimants own it. Claimants were not required to plead facts showing how Ngan obtained the Bitcoin, how their ownership is related to the Government's theory of forfeiture, or whether their ownership is innocent or lawful. *See id.* Allegations on those subjects—whether equivocal or unequivocal—do not bear on whether Claimants met the pleading standard.

**C.**     **The Government's other arguments that the claims were properly stricken under Rule 12(c) are meritless.**

The Government also argues that Claimants did not allege that Ngan sent a screenshot of the 1HQ3 webpage to a prospective buyer. AB at 36. As explained above, Claimants were not required to point to evidence to support their ownership allegation at this stage of the proceeding.

The Government next argues that Claimants' claims were properly stricken because 1HQ3 is "in a constructive trust for the benefit of Silk Road and Ulbricht." *Id.* at 35. This argument fails because it rests on the merits of the Government's theory of forfeiture and on the false premise that Claimants did not dispute the allegations in the Government's amended complaint that "Individual X[] fund[ed] 1HQ3 with bitcoin stolen from Silk Road." *Id.* Claimants disputed those allegations by denying them in their Answers. ER-140–57. Indeed, the Government concedes that Claimants' Answers contained "blanket denials of the government's complaint allegations." *See* AB at 39 n.8. On a motion for judgment on the pleadings, the Government's allegations that "have been denied [by Claimants] are taken as false." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967). While the Government makes a strawman argument that Claimants' Answers do not "place material facts in genuine dispute during summary judgment proceedings"—arguing against a position that Claimants never took— the denials are effective to "contest the government's [allegations in its] complaint." *See* AB at 35, 39 n.8.

7

Finally, the Government contends that the claims of Claimants First 100 and 1st One Hundred Holdings are deficient because their judgment against Ngan was not secured by a particular asset. *Id.* at 34–35. Again, this argument is irrelevant to the question before this Court, which is whether Claimants' claims alleged an ownership interest. They did so: they alleged that Claimants are "the rightful owners of [the Defendant] Property." ER-160. Regardless, this argument cannot support the district court's ruling because it ignores that Claimant Battle Born's claim is not premised on its status as a creditor of Ngan, and instead alleges that Battle Born purchased the Bitcoin in 1HQ3, along with the other assets in Ngan's bankruptcy estate. ER-165.

## II. __The order striking Claimants' claims was erroneous even if this Court *sua sponte* construes the motion to strike as a motion for summary judgment.__

The parties now agree that the Government's motion was a motion for judgment on the pleadings. The Court therefore should not address whether Claimants' claims could have been stricken had the Government instead filed a motion for summary judgment. If the Court

8

does reach that issue, however, it should hold that Claimants' claims should not have been stricken.

## A. Contrary to the Government's mistaken belief, Claimants did not have to "prove" they own the Bitcoin.

The Government repeatedly misstates the applicable standard on a summary-judgment motion, arguing that Claimants had to "prove by a preponderance of the evidence that Ngan had owned 1HQ3." AB at 45; *see id.* ("Battle Born did not have standing because they did not prove an ownership interest in the bitcoin in 1HQ3 by a preponderance of the evidence."). That is a claimant's burden "at trial," not at summary judgment. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("At trial, the claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property.") (cleaned up). "[A] claimant need not *prove* standing by a preponderance of the evidence to survive summary judgment." *United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1164 (9th Cir. 2016).

The inquiry at "summary judgment" is "whether 'a fair-minded jury' could find that the claimant had standing on the evidence

presented." *$133,420.00 in U.S. Currency*, 672 F.3d at 638. To meet this standard, a claimant must merely present "some evidence" that it has a "colorable interest" in the property—not prove that interest by a preponderance of the evidence. *Id.* at 637–39.

While the Government misunderstands the applicable standard, it nevertheless admits that the standard is a "low" bar, and little is required of a claimant. AB at 25, 37; *see also United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (to establish a "colorable claim" claim to the property, a claimant needs "merely an arguable" claim, meaning "one that is not frivolous.").

### B. <u>The Government's misunderstanding of the summary-judgment standard infects its analysis.</u>

Based on its mistaken belief that Claimants had to "prove by a preponderance of the evidence that they ha[ve] any ownership or possessory interest" in the Bitcoin in 1HQ3,[2] the Government urges this

---

[2] To the extent that the Government relies on *United States v. $284,950.00 in US Currency*, 933 F.3d 971, 973 (8th Cir. 2019), that out-of-circuit decision is not controlling. AB at 37–38. In *$284,950.00 in US Currency*, the Eighth Circuit addressed the applicable standards for statutory standing under Rules G(5) and G(8)(c) of the Supplemental Rules, which are not at issue here. 933 F.3d at 973. Further, the Court

Court to weigh Claimants' evidence against other evidence that the Government believes contradicts Claimants' evidence.  AB at 25.  The Government states that "[e]ven if Battle Born . . . met the low threshold" of the some-evidence standard, the "evidence submitted by the government . . . made clear that Battle Born did not have standing," *id.* at 37 (cleaned up), because "[o]ther evidence is . . . inconsistent with Ngan owning 1HQ3," *id.* at 42.  For example, the Government argues that it submitted Haynie's hearsay declaration, which states that Ngan was not Individual X and, according to the Government, tends to show that Ngan did not own the Bitcoin.  *Id.* at 39.  The Government also points to a lack of evidence that Ngan "transferred [the] bitcoin to or from 1HQ3," *id.* at 41, or of any changes to the balance in the 1HQ3 wallet, *id.* at 42.

None of these contentions justify summary judgment for the Government.  This Court's task is to evaluate Claimants' evidence for compliance with the some-evidence standard, "not to weigh the

found that "claimant's assertions of ownership in his initial claim [we]re undermined by his answers to the special interrogatories."  *Id.*  Here, Claimants were not served with special interrogatories before the Government moved to strike.

11

evidence" that Claimants presented against the Government's evidence. *See Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)) (cleaned up). Since Claimants meet the "low threshold" set by the some-evidence standard, that is the end of this Court's inquiry. Any alleged contradictory evidence demonstrates that there are material disputes that a factfinder must resolve.

In addition to being procedurally improper, some of the Government's arguments about purported conflicting evidence are plainly wrong. For instance, the Government argues that "Ngan's failure to resurface after the government seized the bitcoin from 1HQ3, and his failure to file his own verified claim, . . . strongly indicate that Ngan never owned 1HQ3." AB at 43. This argument ignores the fact that Claimants now own all of Ngan's assets. Ngan no longer owns the Bitcoin and has no reason to file a claim in this proceeding. Ngan is also subject to a contempt order in the Nevada bankruptcy court and could be incarcerated if he resurfaced. *In re Ngan*, Case No. 17-14166-BTB, Dkt. Nos. 558, 566 (U.S. Bankr. Ct. D. Nev.).

Again misunderstanding how summary judgment works, the Government also argues that this Court should not credit Ngan's "representation" to a prospective buyer "that he owned the 1HQ3 wallet," because Ngan is "thoroughly unreliable."[3]  AB at 40–41.  This is another argument that improperly urges this Court to assume the role of the factfinder.  At summary judgment, courts "must not make any credibility determinations."  *See Zetwick*, 850 F.3d at 441.  The Court must categorically reject arguments that a witness's statement "proffered by the party opposing summary judgment" is unreliable, "even when the court entertains grave doubts about [the] statement." *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085, 1092 (D.C. Cir. 2017) (rejecting the Government's argument that claimants' testimony regarding their ownership of the defendant property was "implausible") (cleaned up).

---

[3] The Government is in no position to make this argument, as its case is so far premised entirely upon the hearsay statements of Individual X, an admitted thief and hacker.  ER-173–74.

**C.** **The Government's other points fail to undermine Claimants' evidence that Ngan owned—and now Claimants own—the Bitcoin in 1HQ3.**

The Government's other attempts to discredit Claimants' evidence fall short. For example, while the Government (like the district court) acknowledges that Ngan made a representation to a prospective buyer that he owned the Bitcoin in 1HQ3, the Government contends that Ngan's representation is inadequate because it was a "bare assertion" not "made under penalty of perjury." AB at 40. This characterization is inaccurate. Claimants submitted "more" than "a bare assertion that they owned the property." *See $17,900.00 in United States Currency*, 859 F.3d at 1092. Claimants presented evidence that Ngan made extensive arrangements to sell the Bitcoin in 1HQ3, going so far as to set up escrow, arrange for an escrow agent, and draft a purchase-and-sale agreement. *See* OB at 62–63. This contextual evidence corroborates Ngan's representation to his buyer that he owned the Bitcoin. Given the escrow structure of the transaction, Ngan had nothing to gain from that representation unless it was actually true. Thus, Ngan's representation was likely more credible than

14

representations that many claimants make in court documents, where they stand to benefit from their self-serving statements, even if untrue.

The Government relies on Agent Haynie's discussion of various scams involving 1HQ3, *see* AB at 41 (citing ER-115–18), to argue that Ngan, too, was perpetrating a scam. This argument is similarly unpersuasive. In the scams that Haynie describes, the scammers profited despite not owning the Bitcoin in 1HQ3. According to Haynie, scammers purported to be selling the key to 1HQ3 and convinced victims to pay them directly at other addresses, presumably controlled by the scammers. ER-116–17. Here, by contrast, the Government offers no explanation for how Ngan would have profited by telling potential buyers that he owns and can sell them the Bitcoin in 1HQ3 using an escrow agent as an intermediary, unless Ngan actually owned the Bitcoin.

Finally, in response to Claimants' argument that ownership of the Bitcoin cannot be proven by traditional means like title or physical possession, the Government claims that a digital signature is one way to prove ownership. AB at 43 (citing ER-118–20). The argument is a

red herring because Claimants, as third-party purchasers of Ngan's assets, are not in a position to obtain his digital signature.

The Government does not dispute Claimants' interpretation of the evidence that they submitted to show standing. The Government does not dispute that Ngan sent a proposed contract for sale of a significant amount of Bitcoin to a prospective buyer, under which payment for the 1HQ3 Bitcoin would be deposited into a law firm's escrow account. *Id.* at 16. The Government does not dispute that Ngan sent the prospective buyer a screenshot of the blockchain showing 1HQ3 contained 69,370 Bitcoin (the amount the Government seized). *Id.* at 10, 16. Nor does the Government dispute that fifty-four files were deleted from Ngan's computer, which is the same number of transactions the Government alleges were sent from Bitcoin addresses controlled by Silk Road. *Id.* at 11, 16. Viewing this evidence in the light most favorable to Claimants, it is more than some evidence that Ngan owned the Bitcoin, and that Claimants now own it.

**D.** **The Government makes no effort to show that the evidence it offered in support of its forfeiture theory was admissible.**

The main premise of the Government's motion to strike was that its theory of forfeiture was correct—*i.e.*, the Bitcoin was associated with Silk Road and stolen by Individual X—and, as a result, Claimants could not possibly own the Bitcoin because it is "'illicit proceeds from a darknet marketplace.'" OB at 45 (quoting ER-019, 029). If the Government's motion is construed as a motion for summary judgment, the Government (as the movant) had to present competent evidence to support its arguments. Fed. R. Civ. P. 56(c)(1)(A), (c)(4). The Government relied exclusively on Haynie's declaration to establish that the Bitcoin constitutes illicit proceeds from a criminal marketplace that had been stolen by Individual X. *See* OB at 59 (citing ER-114–27). By granting the Government's motion to strike, the district court therefore credited the Government's theory of forfeiture and Haynie's declaration in support of it, reasoning that Claimants' claims should be stricken because Claimants had not shown that Ngan had an "association with Individual X." ER-013.

17

As outlined in Claimants' Opening Brief, the ruling was erroneous in part because Haynie's declaration is based on inadmissible hearsay. OB at 58–61. The Government makes no attempt to show otherwise. The Government admits that Haynie's conclusions about Individual X and the Bitcoin's connection to Silk Road are based on Haynie's out-of-court conversations with Individual X. *See* AB at 39 (Haynie had "'spoken with Individual X'") (quoting ER-115). The Government points to no facts in Haynie's declaration that show he has personal knowledge that Individual X transferred bitcoin from Silk Road. The Government only states that Haynie "investigated Individual X and conducted blockchain analysis of 1HQ3." *Id*. at 43 n.11. Haynie's investigation of events after they happened does not make him a witness to those events. The district court therefore abused its discretion to the extent that it relied on Haynie's hearsay declaration to strike Claimants' claims. *See* OB at 58–61.

Rather than try to explain how Haynie's declaration is admissible, the Government denies that the district court relied on Haynie's declaration, even though it was the only evidence the Government presented. *See* AB at 43. The Government's position is belied by the

18

fact that the district court ruled for the Government on the ground that Claimants had not shown that "Ngan . . . had some association with Individual X." ER-013–014.

The Government falsely claims that the district court's order referred to Individual X, not because Individual X featured in the Government's moving papers and evidence, but because he was part of Claimants' theory of ownership. AB at 44. Individual X is not relevant to Claimants' theory of ownership.[4] Indeed, Claimants presented no evidence about Individual X, and Claimants' claims only refer to Individual X in reference to the Government's allegations. The Government is the only party with any information about Individual X, whom it declines to identify.[5] *Id.* at 23. Thus, the only information that the district court had about Individual X was from Haynie's declaration,

---

[4] The Government asserts that the "lynchpin" of Claimants' claims is that Ngan was Individual X. AB at 39. Not so. The lynchpin of Claimants' claims is that Claimants purchased all of the assets of an individual who owned the Bitcoin in 1HQ3.

[5] The Government unfairly faults Claimants for not showing how Ngan is associated with Individual X. AB at 39 (arguing that "Battle Born submitted no evidence" that Ngan or his affiliates were "Individual X"). The showing is unnecessary to establish standing and impossible because Claimants do not know who Individual X is.

which is improper hearsay. And the only reason the district court would have required a connection between Ngan and Individual X was because it improperly accepted the Government's theory of forfeiture.

### E. The Government concedes that the lawfulness of Claimants' ownership is not relevant to standing.

The district court erred by requiring Claimants to show that their ownership of the Bitcoin is lawful,[6] both because this Court has held that such a showing is not required to establish standing and because Claimants made such a showing as innocent owners. OB at 46–49. The Government agrees that Claimants' status as innocent owners of the Bitcoin in 1HQ3 is irrelevant to standing and "goes to the merits." *See* AB at 44–45 ("The controlling issue raised in the instant appeal is whether Battle Born had standing to challenge the government's forfeiture claim at all, not the merits of the forfeiture judgment."). The Government therefore necessarily concedes that the district court erred when it required Claimants to prove that Ngan was a lawful owner of the Bitcoin in order to establish standing.

---

[6] ER-013 ("Battle Born can offer nothing to suggest how Ngan would have come into . . . lawful ownership . . . [of] the Bitcoin.").

**F.** **The Government cannot justify the district court's denial of Claimants' request to take discovery.**

Claimants argued that, under Rule 56(d) and the four-part standard in *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004), the district court should have allowed them to take discovery and gather more facts on their Article III standing. OB at 67–72. The Government does not address Claimants' arguments that the elements of the standard are satisfied. Instead, the Government makes a few cursory points, most of which are irrelevant to the Rule 56(d) analysis.[7]

First, the Government complains that Claimants sought discovery that went "beyond" the issues raised in the motion to strike. AB at 46. If the Government believes that Claimants' discovery requests are overbroad, the Government may object to the requests when they are propounded. But that is not a reason to deny discovery outright under *Employers Teamsters*. In any case, the Government's claim is inaccurate. All of the discovery that Claimants sought is relevant to the

---

[7] The Government agrees that this Court's review of the Rule 56(d) issue is *de novo*. *See* AB at 28, 45–46.

21

issue raised in the motion to strike: "whether, at the time Claimants purchased the assets of Mr. Ngan's bankruptcy estate, he owned or had a substantial interest in the Defendant Property." *See* OB at 68–71 (quoting ER-111).

Second, the Government argues that Claimants did not show that discovery was "likely to be favorable" to Claimants. AB at 46–47. This is not a requirement under Rule 56(d). Nor would it make sense to require a party requesting leave to take discovery to make a showing that the undiscovered information—about which the party knows nothing—will be favorable. All that is required is for the Rule 56(d) movant to explain how the information sought is "relevant." *Employers Teamsters*, 353 F.3d at 1129. The Government effectively concedes that Claimants seek relevant discovery because it admits that the discovery "might well confirm that Ngan had no relationship to Individual X and had no ownership of 1HQ3." *See* AB at 47. Those are the exact issues raised in the motion to strike.

Third, the Government makes a conclusory argument that Claimants did not enumerate "specific facts." *Id*. at 46. Claimants stated that they would take discovery of individuals, including Ngan,

Ngan's business associate, prospective buyers of Ngan's Bitcoin, Individual X, and Haynie, all to determine "whether, at the time Claimants purchased the assets of Mr. Ngan's bankruptcy estate, he owned or had a substantial interest in the Defendant Property." *See* OB at 68–71 (quoting ER-111). The Government is silent as to why this is not specific enough. AB at 26, 46.

It is inconsistent for the Government to criticize Claimants for having some but not enough facts connecting Ngan to the Bitcoin yet take the position that Claimants are not entitled to take discovery to obtain more facts. The district court should have granted Claimants' Rule 56(d) motion.

## III.  **The Government provides no legitimate alternative ground for affirmance.**

### A.  **This Court cannot and should not affirm on untimeliness.**

This Court cannot affirm the decision to strike Claimants' claims on the "alternative basis" that they were untimely, AB at 26, 47–49, because the district court did not exercise its discretion on that issue in the first instance. If this Court takes up the timeliness issue, it should excuse Claimants' late claims.

**1.    The district court neither analyzed the relevant factors nor exercised its discretion to strike Claimants' claims as untimely.**

The Government urges this Court to "affirm the district court's striking of Battle Born's claims" on the ground that they were filed six weeks after the claim-filing deadline.  *Id*. at 47.  The argument fails at the outset because whether to strike a claim as untimely is an issue that is committed to the district court's discretion, and the district court did not rule on it.[8]  *See United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1117 (9th Cir. 2004) ("We review a district court's decision whether to consider an untimely claim . . . for abuse of discretion.").  The district court did not strike Claimants' claims because they were untimely.  It did not even consider or make findings on any of the twelve factors in the context of timeliness.  On review, this Court will not affirm on an alternative, discretionary ground where, as here, the lower court did not exercise its discretion in the first instance.

_____

[8] The Government misleadingly says that the district court made a "decision not to exercise its discretion to excuse Battle Born's untimeliness."  AB at 48.  In fact, the district court made no decision on timeliness.  ER-013–014.  Indeed, the district court's order suggests, if anything, that it *did* exercise its discretion to excuse any untimeliness because it considered (improperly) the merits of Claimants' claim.

*Gilibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)

("[D]ismissal of an action on [a] . . . ground [that] rests within the sound

discretion of the district court . . . ought not to be granted by this court

in the first instance."); *see also Ashby v. McKenna*, 331 F.3d 1148, 1151

(10th Cir. 2003) ("[W]ith respect to a matter committed to the district

court's discretion," an appellate court "cannot invoke an alternative

basis to affirm unless we can say as a matter of law that it would have

been an abuse of discretion for the trial court to rule otherwise.");[9]

*Manion v. American Airlines, Inc.*, 395 F.3d 428, 431 (D.C. Cir. 2004)

(applying *Ashby*); *United States v. Thompson-Riviere*, 561 F.3d 345, 353

n.5 (4th Cir. 2009) (same).[10]

---

[9] The rule in the Tenth Circuit as stated in *Ashby v. McKenna*, 331 F.3d 1148 (10th Cir. 2003), is that an appellate court may affirm on a discretionary ground that the district court did not address only if the district court would have been compelled, as a matter of law, to exercise its discretion in a manner that favors affirmance.  Here, the Government has not argued that the district court would have abused its discretion had it excused Claimants' late-filed claims.

[10] The Government's case *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023), AB at 28, merely stands for the general proposition that this Court may affirm on an alternative ground that is supported by the record.  *Opara* did not resolve an appeal on a ground that the district court did not address and which would have been within its discretion to adopt or reject.

Because the district court did not exercise its discretion to strike Claimants' claims as untimely, this Court cannot affirm the district court's order on that alternate ground.

### 2. Claimants would be excused under the 12-factor test.

If this Court decides to address the timeliness issue in the first instance, it should still reverse because the relevant factors favor excusing Claimants' delayed filing. To determine whether a claimant's late claim may proceed, the district court considers the following twelve factors: (1) when the claimant became aware of the currency's seizure; (2) whether the United States Attorney may have encouraged the delay; (3) the claimant's health; (4) whether the claimant was properly served; (5) any prejudice to the Government in permitting the claims to go forward; (6) whether the claimant informed the Government and the court of its interest before the claims deadline; (7) whether the claimant expended resources preparing for trial; (8) the claimant's good faith; (9) whether the Government complied with its procedural rules; (10) whether the claimant was acting pro se; (11) whether the claimant petitioned for an enlargement of time; and (12) the sufficiency of the proposed claim. *$100,348.00 in U.S. Currency*, 354 F.3d at 1117–18.

The Seventh and Eleventh Circuits have also held that "the district court should consider the amount seized in evaluating the above [twelve] factors." *See United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004) (citing *U.S. v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 563 (7th Cir.1988)).

This twelve-factor balancing test belies the Government's contention that courts require "strict compliance" with claim-filing requirements. *See* AB at 47 (citing *United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar Cal., Trinity Cnty.*, 787 F.3d 968, 974 (9th Cir. 2015)). In *Coon Creek Rd.*, this Court rejected the argument that a claimant's failure to strictly comply with the procedural rules under Supplemental Rule G amounts to a "per se statutory standing defect" that required automatic dismissal. *Id.* at 975–76. Indeed, this Court has stated that district courts should "exercise [their] discretion to grant additional time where the goals underlying the time restriction and the verification requirement are not thwarted" by a late filing. *$100,348.00 in U.S. Currency*, 354 F.3d at 1117 (internal citations and quotations omitted).

27

a.    **Because the Government suffered no prejudice from Claimants' delayed claims, it would have been an abuse of discretion to strike the claims as untimely.**

The Government argues, without any citation to the record, that it suffered prejudice because Claimants' filing "delayed the resolution of its forfeiture action" and thereby "increased the risk that the [Bitcoin] value would plummet." AB at 48–49.  In fact, Claimants' claims had no impact on the timing of the disposition of the action.  There was no material activity in the underlying case in the six-week period between the deadline to file claims on January 26, 2021 and the date of Claimants' filing on March 16, 2021.  *See* ER-188–89.  At the time of the district court's order, nothing substantive had occurred in the case beyond the filing of the pleadings, and the district court ruled on other claims at the same time as Claimants' claims.  *See* ER-009–014. Indeed, the district court disposed of one claimant, Lucas Buckley, roughly four months *after* striking Claimants.  ER-193–95.  Thus, the Government suffered no prejudice due to Claimants' late claim.

The Government's own actions also undermine any claim of prejudice.  The Government did not file its motion to strike (which it now admits was a motion on the pleadings) until July 13, 2021, nearly

seventeen weeks after Claimants' filing.  ER-189, 192.  Any alleged prejudice from the protracted nature of the litigation and diminished value of the Bitcoin is directly attributable to the Government's own delays.

This Court has held that a district court abuses its discretion if it strikes a claim due to a procedural violation, where the violation "did not prejudice the government, did not appear to be calculated, and did not delay or extend the forfeiture proceedings."  *See United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1009 (9th Cir. 2013) (addressing failure to comply with claim-form requirement).  Because no prejudice or delay resulted from Claimant's late filing, this Court should not affirm on untimeliness.

> **b.     The historic amount of Bitcoin seized weighs heavily in favor of allowing Claimants' claims.**

Courts will consider the value of the property seized in determining whether to allow a late claim.  *See, e.g.*, *$125,938.62*, 370 F.3d at 1329–30.  This action concerns "the largest seizure of cryptocurrency in the history of the Department of Justice."  1-SER-75. At the time the Government published its notice, the value of the

Bitcoin in the 1HQ3 wallet exceeded $1.1 billion.[11]  1-SER-138.  This figure is many times greater than the value of other seized assets that courts have deemed "substantial" enough to warrant an extension of time on verified claims.  *See, e.g., $125,938.62*, 370 F.3d at 1330 (holding that "substantial injustice would result to [] claimants if they are not allowed to perfect their claim," because "the amount at issue," approximately $800,000, was "substantial").

### c. Claimants expended significant resources in preparing to prove their claims.

Claimants' claims should not be stricken for untimeliness because Claimants invested substantial resources investigating their claims, including retaining counsel, blockchain and forensic ESI experts, and investigators.  1-SER-142.  The Government's assertion that Claimants did not devote resources to "preparing for trial" is unpersuasive, given that no trial date had been set when the Government moved to strike. AB at 48.

---

[11] As of the filing of this brief, 69,370 Bitcoin are valued at roughly $1.97 billion.

**d.    Claimants acted diligently and in good faith.**

The Government did not serve Claimants with direct notice, and Claimants did not see the published notice before it was removed from the Government's website after 30 days.  1-SER-135.  As a result, Claimants first became aware that the Government seized the Bitcoin in 1HQ3 on January 28, 2021, two days after the claim-filing deadline.  1-SER-135–136, 142.  Claimants acted diligently and in good faith thereafter, including engaging new counsel and submitting their verified claims.  *See* 1-SER-136, 142.

**e.    Claimants' representation by counsel does not preclude their claims.**

Claimants' representation by attorneys does not foreclose their claims.  AB at 48.  Claimants' counsel did not realize that the "Certificates of Service" listed on the civil forfeiture docket revealed that the Government had previously published a notice of the forfeiture.  1-SER-135, 142.  Counsel reasonably assumed that the Government had not yet issued such a notice and presumed that no clock was running on the claims.  It would be inequitable to hold Claimants responsible for counsel's oversight, particularly given the magnitude of

the claim and the absence of prejudice to the Government. *See*

*$125,938.62*, 370 F.3d at 1329; *$103,387.27*, 863 F.2d at 563.

**B.** **This Court cannot adjudicate the merits to resolve this appeal.**

The Government argues another alternative ground on which it

claims this Court can affirm: Claimants' "claims to the Defendant

Property were meritless" and "Battle Born had no right to it."  AB at 50.

This appeal cannot be decided on the merits.  The appeal is from a

ruling on Article III standing, which "'in no way depends on the

merits.'"  *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (quoting

*Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

The Government makes a two-sentence argument that Claimants

could not have acquired the Bitcoin in Ngan's bankruptcy proceeding

because "[b]ankruptcy trustees have been held to have no interest in

property acquired through fraudulent means."  AB at 51.  Claimants

anticipated and rebutted this argument in their Opening Brief.  OB at

52–53.  As argued there, the Government cannot use its theory on the

merits—that the Bitcoin was acquired through fraudulent means—to

defeat Claimants' standing.  *Id.*; OB at 46–47.  The Government

incorrectly argues that Claimants do not contest its theory that "the

32

contents of 1HQ3 originated from theft of Silk Road." AB at 51.

Claimants disputed the Government's theory in their Answers.

*Compare* ER-172 (Government's allegations about Silk Road and 1HQ3)

*with* ER-143–44 (Claimants denying Government's allegations about

Silk Road and 1HQ3).[12]

Second, the Government contends that Claimants' claims fail on

the merits because they have not established that they are innocent

owners under 18 U.S.C. § 983(d)(3)(A). *See* AB at 50–52. Again, the

argument is a nonstarter, for the reason that it rests on the false

assumption that the Government—which bears the burden of proving a

criminal connection to the property—had actually established a

criminal connection when, at the time Claimants' claims were stricken,

the Government had submitted no competent evidence of that, much

less proven it.

Even considering the merits, the Government fails to establish

that Claimants are not innocent owners. The Government argues that

---

[12] If the motion to strike was a summary-judgment motion, there was no
admissible evidence that the contents of 1HQ3 originated from theft of
Silk Road and nothing for Claimants to contest. OB at 58–61.

Claimants are not "owners" because they do not exercise "dominion or control" over the Bitcoin in 1HQ3 under 18 U.S.C. § 983(d)(6)(B)(iii). AB at 50 (citing *United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T, Serial UC118*, 619 F.3d 1275, 1277, 1279 (11th Cir. 2010)). But that statutory provision, read in full, states that an owner is not "a nominee who exercises no dominion or control over the property." The purpose of this statutory exclusion is to prevent "people engaged in illegal activities" from "disguis[ing] their interests in property by placing title in someone else's name." *One 1990 Beechcraft*, 619 F.3d at 1278–79 (cleaned up). This principle does not apply here. Nothing in the record indicates that Claimants acquired the Bitcoin as mere "nominees" and "bare title holders" in a sham transaction for the benefit of a criminal. *Id.* at 1279. To the contrary, Claimants entered into a court-approved agreement as "good faith" purchasers of all assets of Ngan's bankruptcy estate, including the Bitcoin in 1HQ3. ER-081, 088, 099.

The Government next contends that this Court can affirm because Claimants' status as bona fide purchasers is "debatable." AB at 51. That is no reason to affirm the decision to strike Claimants. If a notion

34

is debatable, the posture of this case demands that the inference be drawn in favor of Claimants, not the Government. Regardless, it is not debatable. The bankruptcy court specifically designated Claimants as "good faith" purchasers of all assets of Ngan's bankruptcy estate, including the Bitcoin in 1HQ3. ER-088, 099.

The Government's final argument is that Claimants are "essentially . . . gratuitous transferee[s]" because they did not know Ngan's estate contained the Bitcoin until after they purchased his assets. AB at 51. The Government misunderstands the term gratuitous transferee. A gratuitous transferee is a person who acquires property without paying for it. *Landwehr v. DuPree*, 72 F.3d 726, 735 (9th Cir. 1995). A "purchaser for value" is, by definition, not a gratuitous transferee. *Id.* Claimants are not gratuitous transferees, because they purchased "[a]ll property of the Bankruptcy Estate," *i.e.*, all of Ngan's assets, for $10,000, as a means to collect on a $2.211 billion judgment they secured against Ngan. ER-099, 2-SER-196–206; AB at 51 n.13. The trustee of Ngan's bankruptcy estate represented that the purchase price was "at fair value," for several reasons, including

35

"[b]ecause of the high cost" to Claimants to pursue the "asset leads" associated with Ngan's estate.  2-SER-200.

## IV.  The parties agree that the jurisdictional issue is moot, and this appeal may proceed.

The parties agree that the jurisdictional issue (whether an order striking a claim is immediately appealable) is moot because the district court has entered final judgment.  AB at 52–53; OB at 7.  The appeal from the final judgment may proceed.[13]

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.


Date:  March 30, 2023          COBLENTZ PATCH DUFFY & BASS LLP


*/s/ Sarah E. Peterson*
Sarah E. Peterson
*Attorneys for Claimants-Appellants Battle Born Investments Company, LLC; First 100, LLC; 1st One Hundred Holdings, LLC*

─────────────────

[13] Claimants do not oppose the Government's request that this Court dismiss Case No. 22-15513, the earlier appeal, and proceed only with Case No. 22-16348.

36

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s) 22-15513 & 22-16348**

I am the attorney or self-represented party.

**This brief contains 6,895 words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with

Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R.
28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App.
P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir.
R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b)
because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to
multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a
longer joint brief.

37

[  ] complies with the length limit designated by court order dated
_____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R.
32-2(a).

**Signature** */s/ Sarah Peterson* **Date** March 30, 2023